IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLND

| | | |
|---|---|---|
| SHENEL NURSE<br>4120 Westchester Rd.<br>Baltimore, MD 21216 | *<br><br>* | |
| Plaintiff, | * | Case No.: _____ |
| v. | * | |
| MONTEREY FINANCIAL SERVICES, LLC<br>4095 Avenida De La Plata<br>Oceanside, CA 92056 | *<br><br>* | |
| | * | **JURY TRIAL DEMAND** |
| Defendant.<br>_____ | * | |

**COMPLAINT**

COMES NOW Plaintiff, Shenel Nurse ("Nurse"), by and through undersigned counsel, Ingmar Goldson, Esq. and The Goldson Law Office, files this Complaint against Defendant, Monterrey Financial Services, LLC ("Monterey"), and in support hereof states as follows:

**INTRODUCTION**

Nurse brings this action against Monterey, a predatory lender that engaged in unlicensed lending and collection activity, to address the damage inflicted by its illegal loan and the unlawful collection efforts that followed. This matter stems from a medical procedure that the Plaintiff received in Florida in December of 2015. Before the procedure, the medical care provider referred the Plaintiff to Blueberry Healthcare Finance, LLC ("Blueberry"), a now-defunct alleged finance company. Soon after the procedure, Monterey notified the Plaintiff that it had "purchased" the Blueberry loan, and Monterey immediately began collecting on the loan. About a year and a half later, when the Plaintiff finally saw the purported terms of the loan, she realized that she was being scammed. Monterey is continuing to attempt to collect on the usurious loan even though the loan was funded by an unlicensed entity under a rent-a-bank scheme that Monterey is employing to attempt to circumvent Maryland's usury statute.

1

## PARTIES

1. Plaintiff Shenel Nurse is a natural person residing in Baltimore, Maryland, and is a "consumer" within the meaning of the Maryland Consumer Protection Act.

2. Defendant Monterey Financial Services, LLC is a California LLC, licensed to do business in the State of Maryland, with its principal place of business in Oceanside, CA.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter because the operative events in this Complaint took place in Baltimore, Maryland, the Defendant regularly transacts business in Baltimore, Maryland, and the Defendant has availed themselves of the jurisdiction of this Court.

## STATEMENTS OF FACT

4. In the Fall of 2015, the Plaintiff made inquiries to have a medical procedure done with a medical provider in Florida. The medical provider stated that they were "partners" with Blueberry and suggested that the Plaintiff apply for financing with Blueberry.

5. Blueberry is a now-defunct Nevada LLC that was never licensed to lend money to Maryland consumers.

6. The Plaintiff received an invoice in August of 2015 from the medical provider around the time when she discussed financing with the medical provider. However, the Plaintiff did not receive a contract with finance terms.

7. The Plaintiff is a Maryland resident and discussed the procedure and financing with the Florida medical health provider while she was physically in Maryland.

8. Though the Plaintiff believes that she may have applied for a loan in 2015, she did not see a contract with any of the loan terms or TILA disclosure that would have been required to be disclosed by Blueberry.

9. In late November of 2015, the Plaintiff received a notice from the Defendant stating that it recently purchaser her contract from Blueberry Healthcare Finance.

10. The medical procedure took place in Florida on December 14, 2015.

2

11. The Defendant began sending the Plaintiff billing statements, and the Plaintiff made monthly payments until she lost her job in September of 2016 and she could not afford the monthly payments.

12. The Plaintiff gained employment in February of 2017 and intended to resume making payments on the loan. At that time, the Plaintiff simply requested that the Defendant show her details of the loan so that she could know exactly what she owed. This is when the Plaintiff learned that she had been scammed.

13. The Defendant informed the Plaintiff that she owed over $9,000, despite having an initial balance of $5,714.00. The Plaintiff knew that was wrong because she made several monthly payments on the loan.

14. The Plaintiff did not understand how the balance could have ballooned to be so large so quickly, so she insisted that the Defendants show her how that sudden increase happened. The Defendant told the Plaintiff that she signed paperwork that allowed the Defendant to charge high interest and high fees. The Plaintiff demanded to see the paperwork.

15. In May of 2017, the Defendant finally sent the Plaintiff paperwork that purportedly had her signature.

16. Among the paperwork that the Defendant sent the Plaintiff was a document that appears to be an "Online Loan Application" (hereinafter "OLA"). The OLA has annotations and notes all over the document. It states "Pt is out of state" and has notes of contact that seem to be between the Plaintiff and others.

17. The OLA was not filled out by the Plaintiff. It has many words misspelled that the Plaintiff knows how to spell, like her name (which is Shenel and not "shenei") and the city where she lives (which is Baltimore and not baltmre).

18. The OLA did not have any signatures on it.

19. Another document that seems to be a financing application was sent to the Plaintiff, and that document has the heading "Blueberry Healthcare Finance LLC Program." The Plaintiff did not see this document until the Defendant sent it to the Plaintiff with the OLA. This document was not signed by the Plaintiff, but it has a signature line with the word "nuerse" typed into it. The Plaintiff's last name is spelled N-U-R-S-E.

20. At this time, in May of 2017, the Defendant also sent the Plaintiff a "promissory note" with a TILA disclosure. The note was purportedly between the Plaintiff and "First

3

Electronic Bank" (hereinafter "FEB"). The Plaintiff did not see the promissory note until the Defendant sent it to her with the OLA. The promissory note has many words misspelled that the Plaintiff knows how to spell, like her name (which is Shenel and not "shenei" and the city where she lives (which is Baltimore and not baltmre). Upon receipt of the promissory note at this time, the Plaintiff first learned the identity of "First Electronic Bank."

21. First Electronic Bank is a Utah state-chartered bank without a federal charter.

22. The Plaintiff would not have signed the promissory note if she had seen it because of the high interest rate and the misspelled words including her name.

23. The promissory note has a signature line that does not have the Plaintiff's signature. The signature line has an "E-sign" that does not have the Plaintiff's name on it; but there is an IP address on the signature line. That IP address is not an IP address associated with the Plaintiff; the IP address indicates that the device assigned that IP address was in Florida.

24. According to an IP address lookup performed on August 14, 2020, the IP address listed on the promissory note was assigned in Miami, Florida. *See* https://whatismyipaddress.com/ip/50.20.172.250. This suggests that the either Broward Cosmetic Center, Blueberry, or the Defendant produced the "digital signature" on the promissory note, and not the Plaintiff, who was in Maryland on August 28, 2015.

25. Page three of the promissory note has an "Endorsement" and "Notice of Intent to Assign" that indicates that the loan was immediately being assigned from First Electronic Bank to the Defendant, Monterey.

26. Predatory lenders like the Defendant utilize the licensing of State and Federal banks to try and circumvent usury caps and other consumer laws in a predatory scheme called "rent-a-bank" lending. Contracts like the promissory note in this case, where the lender is technically a state or federally charted bank, but the loan is immediately assigned to a predatory lender like Monterrey, are the hallmark of rent-a-bank schemes. By using FEB as the nominal lender, Monterey attempts to exploit federal bank preemption doctrines and circumvent Maryland usury laws.

*27.* Maryland's Commissioner of Financial Regulation and the Maryland Court of Appeals have found that the rent-a-bank lending scheme is a violation of the Maryland Credit Services Business Act ("MCSBA"). *See CashCall, Inc. v. Maryland Com'r of Fin. Regulation,*

448 Md. 412, 139 A.3d 990 (2016)(broker that arranged loans and then immediately purchased loans from lenders was credit services business under MCSBA.)

28. The Defendant's predatory lending scheme is clearly illegal considering the dubious "rent-a-bank" transaction was pushed on Nurse through an unlicensed and possibly fictitious lender: Blueberry.

29. Maryland consumer loan law prohibits making loans without an OCFR license and lending money at an interest rate above the statutory maximum annual rate. Md. Code Ann. Fin. Inst. § 11–204; Com. Law § 12–103(a). W. *Sky Fin., LLC v. Maryland Com'r of Fin. Regulation,* No. CIV. WDQ-11-1256, 2011 WL 4929485, at *1 (D. Md. Oct. 13, 2011).

30. Maryland consumer law prohibits finance companies like Monterey from arranging the financing evidenced in the instant case without first being licensed as a credit service business in Maryland.

31. Monterey has never had a credit service business license in Maryland.

32. Monterey was not licensed as a lender in Maryland at the time that it arranged the instant transaction.

33. Plaintiff paid more than $2,500 on this illegal predatory loan which had an original balance of $5,714.00. Despite those payments, the Defendant sent the Plaintiff a notice on May 25, 2018 stating that she owed $9,918.86. The Defendant refused to give the Plaintiff an accounting for the balance, but rather just demanded the increasing loan balance and constantly threatened the Plaintiff's credit and financial reputation.

34. The Plaintiff did intend to take out a loan to finance her medical procedure, however, the Plaintiff was under the impression that she was taking out a loan from an entity named "Blueberry Healthcare," and she assumed that she was dealing with legitimate professionals in the consumer financing industry.

35. After the Defendant "purchased" the loan in 2015, they continued to represent to the Plaintiff that the loan was originated from "Blueberry finance."

36. On the first page of the promissory note, it states that the loan balance was to be paid to "Blueberry Healthcare Finance" on the Plaintiff's behalf.

37. On a May 25, 2018 letter written from the Defendant to the Plaintiff, it stated that it was collecting a balance for its client "Blueberry Healthcare."

38. The Defendants are reporting a purported debt that is owed by the Plaintiff to it, but it is doing so by stating that "Blueberry Healthcare" is the original creditor. Further, the Defendant is reporting an original balance that does not even match the paperwork that it sent to the Plaintiff. For instance, on the Plaintiff's August 3, 2020 Experian credit report, it stated that the original balance was $6,976 even though the promissory note stated an original balance of $5,714.00.

39. To the extent that Monterey may argue that it is not the maker or lender of the loan, Monterey is a holder of the loan in due course.

40. Monterey knows, or recklessly disregarded the fact that, it does not have the right to collect any payments on a loan that was made by an unlicensed entity that was not exempt from licensing.

41. To the extent that Monterey may blame any third party, including Blueberry or the health care provider, for the electronic signature forgery or any other issues at origination of the loan, Monterey is subject to claims and defenses that Ms. Nurse has against third parties like Blueberry and the health care provider. Md. Code Com. Law § 12-309.

### COUNT I – Violation of Maryland Consumer Loan Law ("MCLL")

42. The preceding allegations of this Complaint are reiterated and incorporated herein by reference as if fully set forth herein.

43. For any loan with an original principal balance of more than $2,000, the maximum rate of interest is 2 percent per month on the unpaid principal balance of the loan. Md. Code Ann., Com. Law §§ 12-103(c)(1), 12-306(a)(6)(ii).

44. The loan arranged and originated by Monterey to Ms. Nurse exceeded the 24% statutory maximum rate of interest.

45. MCLL prohibits Monterey from receiving or retaining any principal, interest, fees, or other compensation with respect to the usurious loan, and Plaintiff is entitled to restitution of all money that she paid to Monterey.

WHEREFORE, Plaintiff prays that this Court enter a judgment in her favor for actual damages and/or restitution for all monies that Defendant received from the Plaintiff, and any and all other relief that this Court deems appropriate.

**COUNT II – Claim for Unjust Enrichment for Violation of Maryland Consumer Loan Law**

46. The preceding allegations of this Complaint are reiterated and incorporated herein by reference as if fully set forth herein.

47. Notwithstanding Monterey's rent-a-bank scheme, Monterey is the true "lender" as defined by Md. Code, Com. Law § 12-301(c), therefore Monterey was required to have a license pursuant to Title 11, Subtitle 2 of the Maryland Financial Institutions Article.

48. For any loan with an original principal balance of more than $2,000, the maximum rate of interest is 2 percent per month on the unpaid principal balance of the loan. Md. Code Ann., Com. Law §§ 12-103(c)(1); 12-306(a)(6)(ii).

49. Neither Blueberry nor Monterey were not licensed to arrange or make the loan.

50. The loan arranged and originated by Monterey to Ms. Nurse exceeded the 24% statutory maximum rate of interest.

51. The loan arranged and originated by Monterey is void and unenforceable because it exceeds the 24% statutory maximum rate of interest, and it was made by an unlicensed lender.

52. Monterey cannot collect or attempt to collect, directly or indirectly, any amount from Ms. Nurse because the loan is void and unenforceable. Md. Code Ann., Com. Law §§ 12-314(b)(2).

53. Monterey had no right to collect any money from Ms. Nurse pursuant to the void, unenforceable loan.

54. Monterey was unjustly enriched by each payment Ms. Nurse made to it because each payment was a benefit conferred upon Monterey, Monterey appreciated and knew such benefit, and accepted and retained the benefit without payment of its value.

WHEREFORE, Plaintiff, prays that this Court enter a judgment in her favor for actual damages together with attorneys' fees and costs, and any and all other relief that this Court deems appropriate.

**COUNT III – Violation of Maryland Credit Service Businesses Act ("MCSBA")**
**Alleged Individually and on Behalf of All Class Members**

55. The preceding allegations of this Complaint are reiterated and incorporated herein by reference as if fully set forth herein.

56. The MCSBA defines a "credit services business" as "any person" who, with respect to the extension of credit by others, sells, provides, or performs, or represents that such

7

person can or will sell, provide, or perform" any of certain enumerated services "in return for the payment of money or other valuable consideration." Md. Code Ann., Com. Law § 14-1901(e)(1). The term "person" is defined to include not only individuals, but also various types of entities, as well as "any other legal or commercial entity." Md. Code Ann., Com. Law § 14-1901(g).  The enumerated services that qualify a person as a "credit services business" are: "(i) Improving a consumer's credit record, history, or rating or establishing a new credit file or record; (ii) **Obtaining an extension of credit for a consumer**; or (iii) Providing advice or assistance to a consumer with regard to either [of the first two services]." Md. Code Ann., Com. Law § 14-1901(e)(1) (emphasis added). An "extension of credit" is defined as "the right to defer payment of debt, or to incur debt and defer its payment, offered or granted primarily for personal, family, or household purposes." Md. Code, Com. Law § 14-1901(f).

57. A license is required to operate as a credit service business in Maryland. Md. Code, Com. Law § 14-1903(b).

58. The MCSBA prohibits credit service businesses from charging or receiving "…any money or other valuable consideration in connection with an extension of credit that, when combined with any interest charged on the extension of credit, would exceed the interest rate permitted for the extension of credit under the applicable title of this article;" Md. Code, Com. Law § 14-1902(7).

59. The MCSBA prohibits credit service businesses from "[a]ssist[ing] a consumer to obtain an extension of credit at a rate of interest which, except for federal preemption of State law, would be prohibited under Title 12 of this article. Md. Code, Com. Law § 14-1902(9).

60. As a credit service business, Monterey arranged a loan that exceeded Maryland's statutory cap in violation of the MCSBA.

61. Monterey is not, and has never been, licensed as a credit services business by the Commission of Financial regulation as required by Md. Code, Comm. Law. §§ 14-1902 -1903.

62. Monterey also violated the MCSBA by making or using false or misleading representations in the offer or sale of services of a credit service business by falsely representing to the Plaintiff that Blueberry was the creditor in the transaction, and representing that either Blueberry or Monterey had the right to make the loan and collect on the loan. Md. Code, Com. Law § 14-1902(4).

8

WHEREFORE, Plaintiff, prays that this Court enter a judgment in her favor for actual and statutory damages together with attorneys fees and costs, and any and all other relief that this Court deems appropriate.

**COUNT IV – Violation of Maryland Consumer Debt Collection Act ("MCDCA")**

63. The preceding allegations of this Complaint are reiterated and incorporated herein by reference as if fully set forth herein.

64. Monterey is a "collector" as defined by Md. Code Ann., Law § 14-201(b).

65. The MCDCA prohibits collectors like Monterey from asserting a right with knowledge that the right does not exist. Md. Code Ann., Law § 14-202(8).

66. Monterey asserted a right that it knew did not exist by collecting on a loan that it knew was usurious, was made by employing a rent-a-bank scheme, and made by an unlicensed entity.

67. Monterey asserted a right that it knew did not exist by collecting unauthorized amounts by the Plaintiff.

68. The MCDCA also prohibits collectors like Monterey from disclosing and threatening to disclose information which affects the debtor's reputation for credit worthiness with knowledge that the information is false. Md. Code Ann., Law § 14-202(3).

69. Monterey threatened to disclose and disclosed inaccurate information to credit reporting agencies relating to the rent-a-bank loan, and Monterey knew that the information was false because they knew the details about the rent-a-bank loan. Monterey knew that the loan was void and/or voidable and that the amount that Monterey was reporting was not owed by the Plaintiff.

70. The MCDCA also prohibits collectors from any conduct that violates the FDCPA. Md. Code Ann., Law § 14-202(11).

71. Monterey violated FDCPA §1692e by making false, deceptive, or misleading misrepresentations. In particular, Monterey represented the original creditor of the rent-a-bank loan as Blueberry and Monterey knew that was not the case.

72. Monterey's rent-a-bank scheme included false representations of the character, amount, and legal status of the loan. The rent-a-bank scheme was a false representation in general, and the amounts owed on the note were not legally owed. Further, Monterey

9

misrepresented the original credit amount owed on the Plaintiff's credit reports. FDCPA §1692e(2)(A).

73. As a direct and proximate result of Monterey's MCDCA violations, the Plaintiff suffered damages including emotional distress.

WHEREFORE, Plaintiff, prays that this Court enter a judgment in her favor for actual damages including emotional distress, and any and all other relief that this Court deems appropriate.

**COUNT V – Violation of the Maryland Consumer Protection Act - Md. Code Ann., Comm. Law §§ 13-101 et. seq. ("MCPA")**

74. The preceding allegations of this Complaint are reiterated and incorporated herein by reference as if fully set forth herein.

75. Maryland legislature enacted the MCPA in response to a "mounting concern over the increase of deceptive practices in connection with sales of merchandise, real property, and services and the extension of credit." The practices of Monterey are the type of practices that the MCPA was passed to prevent, and for which the MCPA gives consumers an avenue of redress.

76. Pursuant to the MCPA, unfair and deceptive trade practices include the failure to state a material fact if the failure deceives or tends to deceive. *MCPA § 13-301(3).*

77. As explained in Counts I, and II, Monterey was unfair and deceptive in its dealings with Ms. Nurse when it arranged the rent-a-bank scheme in an effort to circumvent Maryland's 24% usury cap. Monterey continued its unfair and deceptive trade practices by then accepting loan paperwork that was obviously forged and fabricated in bad faith, and by collecting on the void contract. MCPA § 13-301(1), (3).

78. Pursuant to the MCPA, unfair and deceptive trade practices are violations of the MCPA.

79. Monterey's violations of the MCDCA are also per se violations of the MCPA.

80. Pursuant to the MCPA, a person injured by a violation of the MCPA may bring an action to recover for injuries or loss sustained as well as reasonable attorney's fees.

WHEREFORE, Plaintiff, prays that this Court enter a judgment in her favor for actual damages together with attorneys fees and costs, and any and all other relief that this Court deems appropriate.

**COUNT VI – Violation of the Fair Credit Reporting Act ("FCRA")**

81. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

82. The FCRA requires that a furnisher such as Defendant Monterey, after receiving notice from a consumer reporting agency that a consumer disputes information that is being reported by that furnisher, conduct a reasonable investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the consumer reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other consumer reporting agencies to which the furnisher has provided the inaccurate information.

83. From at or before January of 2017 until the present, Defendant Monterey has consistently provided inaccurate information about Plaintiff to Defendants Experian, TransUnion, and Equifax.

84. Plaintiff disputed the inaccurate information with each Defendant CRA.

85. Pursuant to the FCRA, Defendant CRAs each sent Plaintiff' disputes to the furnisher of the false information: Defendant Monterey.

86. Even after Plaintiff's dispute, which included the dubious signature page of the loan paperwork, Defendant Monterey continued to report the inaccurate delinquency on Plaintiff's credit reports.

87. Even after Plaintiff's dispute, Monterey continued to report the original amount owed as $6,976 which is over than a thousand dollars more than the original amount of the

11

illegal loan. This indicates that Monterey did not even do a cursory review of its own documents in response to Plaintiff's disputes. No investigation occurred.

88. 15 U.S.C. § 1681s-2 prohibits furnishers from reporting inaccurate information and sets forth the furnisher's duty to investigate the completeness and accuracy of the information reported when the furnisher receives a dispute from a consumer.

89. After receiving notice by Defendants Experian, Equifax, and TransUnion, as required by the FCRA, Defendant Monterey engaged in conduct that violates 15 USC § 1681s-2(a), (b), by:

   a. Willfully failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

   b. Willfully failing to report the results of investigations to Defendants Experian, TransUnion, and Equifax;

   c. Willfully failing to report an accurate status of the inaccurate information to Defendants Experian, TransUnion, and Equifax;

   d. Willfully failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

   e. Willfully continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning Plaintiff to Defendants Experian, Equifax and TransUnion; and

   f. Willfully failing to comply with the requirements imposed on furnishers of information pursuant to 15 USC § 1681s-2(a), (b).

90. In the alternative, the above-described violations were negligent.

91. Monterey's conduct was a direct and proximate cause, as well as a substantial factor, in causing serious injuries, damages and harm to Plaintiff that are described above.

WHEREFORE, Plaintiff, prays that this Court enter a judgment in her favor for actual damages, statutory damages and punitive damages, together with attorneys fees and costs, and any and all other relief that this Court deems appropriate.

## CONCLUSION

WHEREFORE, Shenel Nurse, request of this Court:

A) An award for actual damages for Counts I – V
B) An award for actual damages, statutory damages, and punitive damages for Count VI
C) An award for pre-judgment and post-judgment interest to the extent permitted by law;
D) An award for attorney's fees, costs and expenses incurred in the investigation, filing, and prosecution of this action to the extent permitted by law;
E) For other and further relief as the Court may deem proper.

Respectfully Submitted,

/s/ Ingmar Goldson
Ingmar Goldson, Esq.
CPF# 1212110336
The Goldson Law Office
1734 Elton Road, Suite 210
Silver Spring, MD 20903
Phone: 240-780-8829
igoldson@goldsonlawoffice.com
Attorney for Plaintiff

          Emanwel J. Turnbull
Fed. Bar No. 19674
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Rd, Ste 230
Annapolis, MD 21403
Telephone: (410) 280-6133
Facsimile: (410) 280-8650
eturnbull@hollandlawfirm.com

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable

/s/ Ingmar Goldson
Ingmar Goldson, Esq.